IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-00574

MICHAEL MENDENHALL,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER,

    Defendant.

## AMENDED COMPLAINT AND JURY DEMAND

Plaintiff Michael Mendenhall, by and through undersigned counsel, hereby submits this Complaint for violation of his rights under the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983.

### INTRODUCTION

1. Mr. Mendenhall brings this test case to challenge an unreasonable search of his townhouse business and an unreasonable seizure of his property in violation of the Fourth Amendment. The search warrant authorizing the search and seizure was invalid because it relied entirely upon hearsay for probable cause of criminal activity.

2. While current Fourth Amendment Supreme Court precedent permits such hearsay, properly understood, the Fourth Amendment Warrant Clause and its oath requirement do not.

3. The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, *supported by Oath or affirmation*." U.S. Const. Amend. IV (emphasis added). Properly understood, this Clause requires that probable cause be supported by firsthand testimony; it does

not allow the allegations of criminal activity to be supported by hearsay. The issuing judge need not exclude hearsay as she would at trial, but there must be enough non-hearsay, firsthand testimony to support probable cause. This rule follows from its text, founding era understanding and practice, and foundational Fourth Amendment case law from the very early Republic.

4. Indeed, until the mid-twentieth century, federal and even state court cases almost uniformly held that the Fourth Amendment's Warrant Clause requires firsthand testimony rather than hearsay to support probable cause. Only in 1960 did the Supreme Court in *Jones v. United States* reverse course to permit hearsay. 362 U.S. 257 (1960), *overruled in part on other grounds by United States v. Salvucci,* 448 U.S. 83 (1980).[1]

5. *Jones* was wrongly decided. It ignored the text and original understanding of the Fourth Amendment, as well as the rich, contrary precedent, in favor of a results-oriented policy that did not even make sense on its own terms.

6. This case seeks to overturn *Jones*[2] and to restore the Warrant Clause requirement of firsthand testimony to support probable cause.

7. Mr. Mendenhall's case illustrates the dangers of reliance on hearsay to justify the most invasive type of government intrusion: a search of a person's private premises—in this case, the townhouse where Mr. Mendenhall would soon open his expanding business.

8. In particular, a detective with the Denver Police Department violated Mr. Mendenhall's Fourth Amendment rights when, pursuant to a search warrant issued solely on the

---

[1] *Salvucci* overruled the portion of *Jones* that addressed so-called Fourth Amendment standing, a completely different legal issue from the question of warrants and hearsay at issue here.

[2] This Complaint therefore satisfies Rule 11's requirement that the claim make a "nonfrivolous argument for … reversing existing law or for establishing new law." Fed. R. Civ. P. 11.

basis of double hearsay, the detective searched Mr. Mendenhall's townhouse and seized a baseball bat that another man claimed Mr. Mendenhall had used to threaten him on Mr. Mendenhall's own doorstep.

## JURISDICTION AND VENUE

9. This Court possesses subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), (4).

10. Venue is proper within this district pursuant to 28 U.S.C § 1391 because all events giving rise to the claims occurred in this judicial district.

## PARTIES

11. Michael Mendenhall is and was, at all times relevant to this action, a resident of and domiciled in the state of Colorado.

12. Defendant City and County of Denver ("Denver") is a municipal corporation within the State of Colorado. It employed the officer who violated Mr. Mendenhall's rights pursuant to Denver rule, regulation, policy, custom and practice.

## STATEMENT OF FACTS

13. Mr. Mendenhall began his career in the service industry as a banquet server before eventually starting his own business, which began as a small staffing agency. Within a few years, Mr. Mendenhall grew a thriving business responsible for staffing Denver's largest venues, stadiums, and hotels.

14. A few months prior to the execution of the search warrant at issue, Mr. Mendenhall moved his rapidly expanding business into a converted townhouse at 1748 Blake Street Denver, Colorado 80202.[3]

15. The townhouse included a full kitchen and dining room area on the middle floor.

16. During all times relevant to this case, Mr. Mendenhall enjoyed a reasonable expectation of privacy in the townhouse. The company he owned leased it, and he therefore had both a property and possessory interest in it.

17. On March 10, 2023, Mr. Mendenhall stayed late to set up his office computers with the help of a friend. It was after business hours, and the front door was locked.

18. During a break, Mr. Mendenhall and his friend drank several "Trulys" (alcoholic seltzer waters) in the townhouse kitchen and dining area.

19. At around 10 p.m., Mr. Mendenhall heard women screaming and a man yelling just outside the townhouse front door. Soon, the door itself began to rattle.

20. Concerned about the women's safety, Mr. Mendenhall grabbed a wooden baseball bat (a commemorative bat from an All-Star Game) as his friend opened the door to see what was happening.

21. Sitting on the stoop of the townhouse with his two dogs was a strange man yelling, as well as a group of women.

22. Mr. Mendenhall and his friend told the man, later identified as Sean Horan, to leave.

---

[3] The search warrant obtained in this case at one point incorrectly identified Mr. Mendenhall's townhouse as "1748 Ogden St."

4

23. Mr. Horan initially refused to leave.

24. After further argument, Mr. Horan announced he would call the police.

25. Mr. Mendenhall closed the door.

26. Moments later, Mr. Horan called 911.

27. Four police officers arrived near Mr. Mendenhall's townhouse shortly before 11 p.m.

28. The officers found Mr. Horan across the street from Mr. Mendenhall's townhouse with his two dogs.

29. As the officers walked up to Mr. Horan, he told them, unprompted, that he "for sure" would like to press charges.

30. The officers asked Mr. Horan to confirm he was the person who called 911, which he did, and then asked Mr. Horan what happened.

31. Mr. Horan related an odd, inconsistent, account.

32. Mr. Horan told officers that he was from Elizabeth, Colorado, nearly fifty miles away, but he explained that he comes to Denver often because he is at a place in his life, "where I need to walk."

33. The officers did not ask why.

34. Mr. Horan then explained that he had been walking and sat on the townhouse stoop, just feet from its front door.

35. Mr. Horan described that, as he was sitting, he ran into a group of two or five (his account varied) women. Soon, he said, Mr. Mendenhall opened the door and demanded they leave.

5

36. Mr. Horan told the officers that Mr. Mendenhall threatened him with a baseball bat while both stood on Mr. Mendenhall's own doorstep.

37. During his conversation with the Denver Police officers, Mr. Horan stated that he was carrying a Sig Sauer nine-millimeter handgun with an extended magazine.

38. Mr. Horan later told the officers that the weapon was the "attack-option" model.

39. The officers disregarded this statement.

40. Despite Mr. Horan's strange interjections and discrepancies in his story, the officers asked few follow-up or clarifying questions.

41. Instead, all four officers went to Mr. Mendenhall's townhouse and arrested him as soon as he opened the door and came out. They immediately took him, in handcuffs, across the street and secured him in a squad car.

42. At that point, officers at the scene decided to obtain a search warrant in order to search the townhouse for the baseball bat.

43. One of these officers therefore called Detective Nicholas Rocco-McKeel and recounted Mr. Horan's story so that Detective Rocco-McKeel could obtain a warrant. Detective Rocco-McKeel did not speak to Mr. Horan.

44. Detective Rocco-McKeel is a police officer employed by Defendant City and County of Denver.

45. Detective Rocco-McKeel prepared a search warrant application and affidavit that relied entirely on what the other officer had told him about what Mr. Horan had, in turn, told that officer.

46.     The affidavit appears to allege that the bat was evidence of a crime, or an instrumentality of the crime.[4] It does not name the crime but recites facts of an alleged unlawful threat. In other words, probable cause to search for and seize the bat would have required probable cause of underlying criminal activity—here Mr. Mendenhall's alleged unlawful threat.

47.     As required by Denver Police Manual Section 107.01(9)(a), Detective Rocco-McKeel obtained the written approval of his supervising officer and the assigned assistant district attorney as part of the warrant application. Manual of Operations for the Police Department of the City and County of Denver, (revised July 16, 2021) ("Denver Police Manual").

48.     Denver Police Manual Section 107.01(8)(e) authorizes the use of hearsay to support a search warrant application. In particular, it provides that the "officer may rely upon information received through an informant, rather than upon direct observations, to show probable cause."

49.     On March 11, 2023, at 12:34 a.m., based on Detective Rocco-McKeel's affidavit, Judge Reneé A. Goble issued a search warrant for Mr. Mendenhall's townhouse to Detective Rocco-McKeel.

50.     About twenty minutes later, Detective Rocco-McKeel executed the warrant. Pursuant to this warrant, he entered and searched Mr. Mendenhall's townhouse and seized his bat.

---

[4] The affidavit uses broad, boilerplate language that embraces numerous potential justifications for authorizing the search of and seizure of the bat.

51. Detective Rocco-McKeel entered Mr. Mendenhall's townhouse after one of the other officers had removed Mr. Mendenhall from the scene. He searched the empty premises for the baseball bat owned by Mr. Mendenhall, found it, and seized it.

52. The search of the townhouse and seizure of the bat were unreasonable and unconstitutional because they were authorized by an invalid warrant.

53. The warrant was invalid because probable cause for criminal activity relied entirely upon the double hearsay of Mr. Horan's story that Mr. Mendenhall had unlawfully threatened him.

54. Mr. Horan did not testify before Judge Goble, file an affidavit, or otherwise swear to the facts underlying the criminal activities he alleged Mr. Mendenhall committed. Nor did the officer who relayed Horan's story to Detective Rocco-McKeel testify before the judge or otherwise swear to the facts.

55. Had Mr. Horan testified in court, the judge would have had the opportunity to see Mr. Horan, hear his testimony, and ask follow-up questions.

56. Detective Rocco-McKeel, who did swear to the affidavit, had neither observed any of the relevant facts nor spoken to Mr. Horan. Rather, Detective Rocco-McKeel swore that Mr. Horan told another officer, who told Detective Rocco-McKeel, that Mr. Mendenhall had unlawfully threatened Mr. Horan with a bat.

57. When one subtracts out this hearsay, the affidavit lacked probable cause to establish any of the elements of the presumed crime, menacing, upon which the search warrant relied. Without Mr. Horan's double-hearsay account, there was no evidence or information before the judge that Mr. Mendenhall raised a bat at Mr. Horan or even that they had had any

confrontation or interaction whatsoever. Similarly, there was no information that Mr. Mendenhall had intended to put Mr. Horan in fear of physical harm.

58. This search came more than an hour and a half after Mr. Mendenhall had been arrested and charged with felony menacing. He spent the night in the Denver County jail before he was released on bond.

59. Six days later, the City and County of Denver dropped all criminal charges against Mr. Mendenhall.

60. It has yet to return his bat.

*Facts Concerning Municipal Liability*

61. Denver Police Manual Section 107.01(8)(e) authorizes the use of hearsay to support a search warrant application. In particular, it provides that the "officer may rely upon information received through an informant, rather than upon direct observations, to show probable cause."

62. This policy is supported by a custom of relying on hearsay for warrants. A physical review of 100s of search warrants issued by the Denver District/County Court within the last two years and maintained at the Lindsey-Flanigan courthouse revealed that the use of hearsay is pervasive. For many affidavits, the hearsay relied upon came from a named informant; for many others, an unnamed informant. For April 2024 alone, for example, at least 10 relied almost entirely upon hearsay to establish probable cause; that is, there would have been no probable cause without the hearsay.

63. The underlying affidavits, relying upon hearsay, were sworn by a range of highly experienced police detectives, and other officers employed by Denver. These detectives and

9

officers reported in their affidavits that they had worked on hundreds of cases involving search warrants, received additional city-authorized training for search warrant preparation (including receiving a formal certification for such search warrant training), and had even trained other officers.

64. In addition, each of these warrants was approved by their supervisors in the police department, also employees of Denver.

65. This widespread reliance on hearsay by Denver police detectives and other officers trained and certified by Denver and Denver-approved courses shows that they are simply following their training and Denver custom, itself consistent with Denver's written policy to permit hearsay to establish probable cause for warrants.

66. This custom to rely on hearsay is also consistent with Colorado Law. *See* Colo. R. Crim. P. 41, Annotation I ("a search warrant may be based on hearsay, as long as a substantial basis for crediting the hearsay exists.") (citing *People v. Woods*, 485 P.2d 491 (1971)).

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Fourth Amendment – Unlawful Search
### 42 U.S.C. § 1983 – *Monell*

67. Mr. Mendenhall incorporates all other paragraphs of this Complaint as if fully set forth herein.

68. At all relevant times, Detective Rocco-McKeel, not a defendant here, was an employee of the City and County of Denver and acted under color of state law as set forth in 42 U.S.C. § 1983.

69. Defendant City and County of Denver is a municipal corporation and a person for purposes of Section 1983.

70. Detective Rocco-McKeel violated Mr. Mendenhall's right to be free from an unreasonable search under the Fourth Amendment of the United States Constitution. He entered Mr. Mendenhall's business to search it pursuant to an invalid warrant.

71. The City and County of Denver is liable for Detective Rocco-McKeel's unconstitutional search (and seizure) under 42 U.S.C. § 1983 and *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978) because he acted pursuant to Defendant Denver's rule, regulation, policy, custom and practice.

72. The Denver Police Department maintains a written policy, custom, and practice authorizing the issuance and execution of search and arrest warrants which are premised on or contain hearsay.

73. As for policy, the Denver Police Department Manual Section 107.01(8)(e) authorizes reliance on hearsay to show probable cause in the issuance and execution of search and arrest warrants as stated in Paragraph 61 above.

74. In addition, Denver has a custom of relying on hearsay to support probable cause for search warrants as stated in Paragraphs 62-65 above.

75. Acting pursuant to the Denver Police Manual, and Denver custom, Detective Rocco-McKeel violated Mr. Mendenhall's Fourth Amendment right to be secure against an unreasonable search.

76. Mr. Mendenhall enjoyed a reasonable expectation of privacy over the townhouse, closed to outsiders at that late hour. He also held possession and control over the townhouse, as well as a legal property interest in it.

77. Detective Rocco-McKeel violated this interest by entering the interior of the townhouse to search for the baseball bat. He entered and searched pursuant to an invalid warrant resting upon hearsay, and this search was therefore an unconstitutional, unreasonable search under the Fourth Amendment.

78. Detective Rocco-McKeel obtained this warrant with the signed authorization of his supervisor as well as of a representative of the district attorney's office, as required by Denver Police Manual Section 107.01(9)(a).

79. Even though Rocco-McKeel relied on a warrant, this warrant was invalid because the judge's finding of probable cause of criminal conduct rested entirely upon hearsay. Without the hearsay, indeed double hearsay, of Mr. Horan's account, the affidavit would have had no facts alleging criminal conduct and would therefore have lacked probable cause.

80. The Fourth Amendment of the United States Constitution says that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV.

81. The Fourth Amendment "Oath or affirmation" provision, properly understood, precludes hearsay to support probable cause. Laurent Sacharoff, *The Broken Fourth Amendment Oath*, 74 Stan. L. Rev. 603 (2022); *see also* Ex parte *Bollman*, 8 U.S. 75, 110, 119 (1807). It requires that the testimony under oath be firsthand testimony even though judges issue warrants *ex parte*. Even read more generally, the Warrant Clause precludes hearsay to support probable cause. This follows from its text, founding era understanding and practice, as well as

12

foundational Fourth Amendment case law from the very early Republic. Sacharoff, *supra*, at 619-673.

82. Indeed, until the mid-twentieth century, federal and even state court cases almost uniformly held that the Warrant Clause bans hearsay. E.g., *Giles v. United States*, 284 F. 208, 214 (1st Cir. 1922); People v. Elias, 147 N.E. 472, 475-75 (Ill. 1925); State v. Gleason, 4 P. 363, 363 (Kan. 1884); *see also Grau v. United States*, 287 U.S. 124, 127-28 (1932). Only in 1960 did the Supreme Court in *Jones v. United States* reverse course to permit hearsay. 362 U.S. 257 (1960).

83. Although *Jones* expressly permitted hearsay to support probable cause for a warrant, *Jones* was wrongly decided. It ignored the text and original understanding of the Fourth Amendment, as well as the rich, contrary precedent, in favor of a results-oriented policy that did not even make sense on its own terms. *Id.*

84. This case seeks to overturn *Jones* and to restore the Warrant Clause requirement of firsthand testimony to support probable cause.

## SECOND CLAIM FOR RELIEF
### Fourth Amendment – Unlawful Seizure
### 42 U.S.C. § 1983 – *Monell*

85. Mr. Mendenhall incorporates all other paragraphs of this Complaint as if fully set forth herein.

86. Detective Rocco-McKeel violated Mr. Mendenhall's right to be free from an unreasonable seizure under the Fourth Amendment to the United States Constitution when he seized Mr. Mendenhall's bat pursuant to an invalid warrant. Mr. Mendenhall enjoyed a possessory and ownership property right in the bat, which has yet to be returned.

13

87. As further described above, Defendant Denver is liable under Section 1983 for this conduct.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Mendenhall respectfully requests this Court enter judgment in his favor and against Defendant, and award him all relief allowed by law and equity, including but not limited to the following:

a. A declaration that Defendant deprived Mr. Mendenhall of his rights under the Fourth Amendment to the United States Constitution;

b. Compensatory damages, including but not limited to those for past and future pecuniary and non-pecuniary losses, emotional distress, and other non-pecuniary losses;

c. An order directing Defendant to return his baseball bat;

d. Attorneys' fees and costs;

e. Any further relief this Court may deem appropriate.

PLAINTIFF DEMANDS TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.

DATED: May 20, 2024

Respectfully submitted,

STUDENT LAW OFFICE

*s/ Laurent A. Sacharoff*

Laurent A. Sacharoff
Phone: (303) 871-6361
lsacharoff@yahoo.com

*s/ Laura Rovner*
Laura Rovner

*s/ Nicholas A. Lutz*
Nicholas A. Lutz

*s/ Miriam Kerler*
Miriam Kerler

Civil Rights Clinic
University of Denver Sturm College of Law
2255 East Evans Av. Ste. 335
Denver, CO 80208
Phone: (303) 871-6441
lrovner@law.du.edu

*Counsel for Plaintiff*

Michael Mendenhall
1748 Blake Street
Denver, CO 80202