**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 24-cv-574-PAB-KAS

**MICHAEL MENDENHALL**,
Plaintiff,

v.

**CITY AND COUNTY OF DENVER**,
Defendant.

---

**DEFENDANT CITY AND COUNTY OF DENVER'S**
**MOTION TO DISMISS AMENDED COMPLAINT UNDER RULE 12(b)(6)**

---

Defendant, City and County of Denver ("Denver"), pursuant to Rule 12(b)(6), submits this Motion to Dismiss Plaintiff's Amended Complaint and Jury Demand ("Amended Complaint"). [Doc. 16]. **AS GROUNDS**, Denver states the following:

## CERTIFICATE OF CONFERRAL

Undersigned counsel conferred with Plaintiff's counsel on June 3, 2024, via email, detailing the basis for the requested relief and Denver's position that the Amended Complaint was insufficiently pleaded. Plaintiff opposes the relief requested.

## INTRODUCTION

Plaintiff asserts constitutional violations under 42 U.S.C. § 1983 against Denver, per *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978), arising out of an incident that occurred in the late evening hours of March 10, 2023, and into the early morning of March 11, 2023, at Plaintiff's townhouse in Denver. [Doc. 16 at ¶¶ 14-51]. That night police officers from the Denver Police Department ("DPD") responded to a 911 call made by an individual identified as Sean Horan, who claimed Plaintiff had threatened him with a baseball bat while Mr. Horan was speaking with some women in front of the townhouse. [*Id.* at ¶¶ 26-40]. After DPD officers took Mr. Horan's statement,

the officers arrested Plaintiff. [*Id.* at ¶ 41]. Subsequently, those officers relayed the details of their investigation and arrest of Plaintiff to DPD Detective Rocco-McKeel ("Detective"), for the purposes of obtaining a search warrant for the townhouse to locate the alleged bat. [*Id.* at ¶¶ 42-43].

The Detective prepared an affidavit ("Affidavit") containing specific details about the incident to apply for the search warrant, relying on the information provided by the on-scene officers and statements made by the reported victim, Mr. Horan, to establish that the bat was evidence of a crime. [*Id.* at ¶¶ 45-46]. Prior to appearing before a judge to seek search warrant authorization, the Affidavit was reviewed and approved by the Detective's supervisor and a deputy district attorney (the "DA"). [*Id.* at ¶ 47]. After reviewing the Detective's search warrant application, including the approved Affidavit, Judge Renee A. Goble (the "Judge") issued a search warrant authorizing the Detective to search the townhouse to seize the bat ("Search Warrant"). [Doc. 1 at ¶ 49]. Shortly thereafter, the Detective executed the Search Warrant, entered the townhouse, found the bat, and seized it for evidence. [*Id.* at ¶¶ 50-51].

Plaintiff claims the search of his townhouse and the seizure of his bat were Fourth Amendment violations because the Search Warrant's probable cause was invalidly based on hearsay, either from the on-scene officers or statements from Mr. Horan relayed by those officers to the Detective. [*Id.* at ¶¶ 52-57]. The Amended Complaint alleges the text of the Fourth Amendment is "properly understood" to mean that hearsay is impermissible and anyone swearing to a search warrant must have firsthand knowledge of their averments. [*Id.* at ¶¶ 1-5; 80-83]. As a result, Plaintiff alleges that the use of hearsay in the Affidavit as a basis for probable cause rendered the Search Warrant invalid and Plaintiff's rights were violated when it was executed by the Detective. [*Id.* at ¶¶ 52-53].

Plaintiff does not name the on-scene officers, Detective, DA, or Judge as defendants. Instead, he brings only a *Monell* municipal liability claim, asserting that Denver is liable for his purported constitutional injuries resulting from the alleged unlawful search of his townhouse and seizure of his

bat. However, "[t]he Supreme Court has made clear that 'a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.'" *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Thus, to avoid dismissal, Plaintiff must present plausible allegations that Denver's actions, in the form of a policy or well-settled custom or practice, were the moving force that caused Plaintiff's alleged constitutional injuries. *Id.*

However, the Amended Complaint falls far short of the plausibility standard required by Rule 12(b)(6). First, the alleged offending formal policy § 107.01(8)(e) the DPD Operations Manual ("Ops Manual")[1], is inapplicable to the instant case as the named 911 caller, Mr. Horan, is not an informant as contemplated by that section. Further, the factual allegations are too general and vague, conclusory, remote in time, and dissimilar to support a "reasonable inference that [Denver] is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Indeed, Plaintiff's claims rely solely on subjective legal conclusions that *Jones v.* U.S., a 1960 U.S. Supreme Court case establishing that officers can rely on hearsay as grounds for a search warrant, was wrongly decided. *Jones v. U.S.*, 362 U.S. 257 (1960). However, Plaintiff's allegations fail to show that the use of hearsay in this case violated the Fourth Amendment or that *Jones* and its well-settled progeny is incorrect. There simply is no justifiable legal basis to overcome the *stare decisis* doctrine to overturn *Jones,* especially considering the inapplicability of the cases cited by Plaintiff.

Moreover, Plaintiff's pleadings fail to show how Denver could possibly have known of a likely constitutional violation in these circumstances, let alone demonstrated deliberate indifference, as

[1] The Ops Manual section relevant to Plaintiff's claims was not included in the Complaint nor attached as an exhibit to show the existence of a plausible offending Denver policy, so Denver is relying on the publicly-available Ops Manual found on Denver's DPD website as the apparent source cited by the Complaint, with the seemingly operative "Search and Seizure" section, § 107.00, last revised on July 16, 2021. (https://www.denvergov.org/files/assets/public/v/60/police-department/documents/operations-manual/om_book.pdf).

required for a municipal liability claim. And even if relying on hearsay in the Affidavit was impermissible, Denver could not have directly caused Plaintiff's injuries since the Affidavit was reviewed and approved by a DA and the Judge, respectively, and there is no allegation here that either was misled by a false statement or omission. Accordingly, all claims against Denver should be dismissed pursuant to Rule 12(b)(6).

**STANDARD OF REVIEW**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A court should disregard conclusory allegations and look only to whether the remaining factual allegations plausibly suggest the defendant is liable. *Id.* at 1191. "'[P]lausibility' in this context . . . refer[s] to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). A claim may be dismissed "either because it asserts a legal theory not cognizable as a matter of law or because the claim fails to allege sufficient facts to support a cognizable legal claim." *Essex Ins. Co. v. Tyler*, 309 F. Supp. 2d 1270, 1271 (D. Colo. 2004).

## ARGUMENT

### I. No basis exists to overturn *Jones v. U.S.* and its progeny.

There is no legitimate legal basis for this Court to find that *Jones v. U.S.* was wrongly decided. In *Jones*, the Court held that for the purposes of establishing probable cause, "an officer may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." *Jones*, 362 U.S. at 269 (citing *Draper v. U.S.*, 358 U.S. 307 (1959)). The court clarified, "[a]n affidavit is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented. . . . We conclude therefore that hearsay may be the basis for a warrant." *Id.*

Plaintiff seeks to overturn *Jones*, but that request is misguided for several reasons. First, *Jones* is factually dissimilar. Mr. Horan is the *named victim* of his reported crime resulting in Plaintiff's arrest. Specifically, Mr. Horan claimed that Plaintiff threatened him with a bat. [Doc. 16 at ¶ 36]. In contrast, *Jones* is concerned with what corroborating evidence is necessary when probable cause in a search warrant is based in part on information provided by an *unidentified informant*. Here, the information relied upon for the probable cause statement was provided by a known individual and that information was also corroborated by officer observations at the scene.

More importantly, the Amended Complaint does not—and cannot—cite to *any* controlling case, state law, or federal law (or the plain text of the Fourth Amendment), that states hearsay is an insufficient basis for probable cause—because no such authority exists. Instead, Plaintiff claims that *Jones* was incorrectly decided because, in his view, the Supreme Court's majority opinion in 1960 lacked a proper understanding of the Fourth Amendment. He alleges that "until the mid-twentieth century, federal and even state court cases almost uniformly held that the Fourth Amendment's Warrant Clause requires firsthand testimony rather than hearsay to support probable cause." [*Id.* at ¶ 4-5]. Plaintiff cites four cases to support this allegation: *Giles v. United States*, 284 F. 208, 214 (1st Cir. 1922); *People*

*v. Elias*, 147 N.E. 472, 475-75 (Ill. 1925); *State v. Gleason*, 4 P. 363, 363 (Kan. 1884); and *Grau v. United States*, 287 U.S. 124, 127-28 (1932). [*Id.* at ¶ 82]. But none of these cases stand for Plaintiff's broad proposition that the Fourth Amendment's "Warrant Clause bans hearsay[.]" [Doc. 16 at ¶ 82].

Plaintiff first cites *State v. Gleason,* a Kansas Supreme Court case from 1884. 4 P. 363 (Kan. 1884). But that case is completely inapplicable here. In *Gleason*, the Court held that prosecutors could not rely on hearsay as a basis for warrants used by prosecutors swearing to a verified complaint or information to fully initiate a misdemeanor case without a preliminary hearing. Likewise, the prohibition-era Illinois Supreme Court case, *People v. Elias*, lacks any precedential value because it prohibits the use of hearsay in warrants where the entire basis for probable cause is merely uncorroborated hearsay and unsubstantiated conclusions. *People v. Elias*, 147 N.E. 472 (Ill. 1925). But here, other corroborating evidence was included in the probable cause statement presented to the Judge, not just the statements from Mr. Horan. Plaintiff's next cited case, *Giles v. U.S.*, a 1922 decision from the First Circuit, does not directly implicate the Warrant Clause but rather interprets the National Prohibition Act, which specifically required any probable cause statement in a search warrant for liquor to be supported only by evidence admissible at trial. In addition, unlike in this case, the warrant in *Giles* was only based on hearsay, without other corroborating evidence. *Giles v. United States*, 284 F. 208, 214 (1st Cir. 1922); *see also Elias*, 147 N.E. at 475. Last, Plaintiff relies on dictum in *Grau v. United States*, that a search warrant may only be issued upon evidence admissible at a jury trial. 287 U.S. 124, 127-28 (1932). Bur *Grau* cites *Giles* for this proposition, which, as stated, relates to requirements specific to the National Prohibition Act. Moreover, subsequent United States Supreme Court cases, even prior to *Jones,* reject *Grau*'s position on hearsay. *See Brinegar v. United States*, 338 U.S. 160, 174, fn. 13 (1949) ("For this proposition there was no authority in the decisions of this Court. It was stated in a case in which the evidence adduced to prove probable cause was not incompetent, but was insufficient to support the inference necessary to the existence of probable cause. The statement has

not been repeated by this Court."); *see also Draper*, 358 U.S. at 312, fn. 4 (noting that *Brinegar* "thoroughly discredited and rejected" *Grau*'s hearsay proposition). In short, all of Plaintiff's alleged pre-*Jones* authority for overturning the Supreme Court falls well short of providing any specific justification to overturn *Jones*.

Further, contrary to Plaintiff's unsupported allegations, the Court in *Jones* thoroughly explained its reasoning for holding that police officers can rely on hearsay in probable cause statements.[2] It pointed out that in *Draper v. U.S.,* originally a Tenth Circuit case, "[w]e rejected the contention that an officer may act without a warrant only when his basis for acting would be competent evidence upon a trial to prove a defendant's guilt." *Jones*, 362 U.S. at 270; *see also Draper*, 358 U.S. 307. That is because "such a contention 'goes too far in confusing and disregarding the difference between what is required to prove guilt in a criminal case and what is required to show probable cause in a search." *Id.* at 270. Subsequent courts have followed *Jones* for over 60 years. *See, e.g. Illinois v. Gates*, 462 U.S. 213, 239-240 (1983); *United States v. Mathis*, 357 F.3d 1200, 1204–05 (10th Cir. 2004) (collecting Tenth Circuit cases holding that hearsay is permissible for probable cause determinations); *see also $149,442.43 in U.S. Currency,* 965 F.2d at 874 n. 3 ("We restate that multiple layers of hearsay may form the basis of a finding of probable cause."); *United States v. Ventresca,* 380 U.S. 102, 111 (1965) (regarding hearsay from police officers: "[o]bservations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number."); *U.S. v. Snow,* 919 F.2d 1458, 1460 (1990) (explaining that hearsay evidence from other police officers' informants, bolstered in part with separate corroboration, was sufficient to support probable cause).

Moreover, overturning *Jones* requires overcoming the doctrine of *stare decisis*, which is a difficult task. *Stare decisis* "promotes the evenhanded, predictable, and consistent development of legal

[2] While Denver does not need to defend the Supreme Court's reasoning in *Jones* to show why Plaintiff's case must be dismissed, it briefly makes the point here in the interest of completeness.

principles" and "contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee*, 501 U.S. 808, 827 (1991). Notably, overturning constitutional precedent "demands specific justification." *Gamble v. United States,* 587 U.S. 678, 691 (2019) (quoting *Arizona v. Rumsey*, 467 U.S. 203, 212, (1984)). "This means that something more than 'ambiguous historical evidence' is required before [the Court] will 'flatly overrule a number of major decisions of this Court.'" *Gamble,* 587 U.S. at 691 (citing *Welch v. Texas Dept. of Highways and Public Transp.*, 483 U.S. 468, 479 (1987). Further, "'the strength of the case for adhering to such decisions grows in proportion to their 'antiquity.'" *Id.* at 691 (citing *Montejo v. Louisiana*, 556 U.S. 778, 792, 129 (2009)). Plaintiff provides no specific justification for overturning over 60 years of precedent. And although Plaintiff claims "rich, contrary precedent" prior to *Jones* exists [Doc. 16 at ¶¶ 5, 82], as discussed, each case Plaintiff relies upon is inapposite.

In sum, beyond the fact that some form of hearsay played a part in the probable cause findings both here and in *Jones*, Plaintiff cannot establish that the *Jones* facts and holdings are sufficiently similar to this case to merit overturning decades of precedent. Moreover, even if *Jones* was applicable to the allegations, Plaintiff offers no specific justifications to overcome *stare decisis* allowing hearsay as a basis for probable cause. Thus, there is no basis to consider the Search Warrant here invalid, and this Court should dismiss all claims against Denver. *See, e.g., City of Los Angeles v. Heller*, 475 U.S. 796, 798-99 (1986); *Dodds v. Richardson,* 614 F.3d 1185, 1198 (10th Cir. 2010) (a municipality may not be held liable where no underlying constitutional violation exists).

## II. Plaintiff fails to state a plausible municipal liability claim against Denver.

Notwithstanding Plaintiff's inability to establish a proper basis for overturning *Jones* to allow an arguable inference that the Search Warrant was invalid, he fails to assert a plausible liability claim against Denver. To state a plausible claim for municipal liability, Plaintiff must present allegations sufficient to show that: "(1) a municipality enacted or maintained a policy, (2) the municipality was deliberately indifferent to the resulting constitutional violations, and (3) the policy caused the

underlying constitutional violation." *Arnold v. City of Olathe, Kansas*, 35 F.4th 778, 795 (10th Cir. 2022); *see also Finch v. Rapp*, 38 F.4th 1234, 1244 (10th Cir. 2022). Both claims in the Amended Complaint fail to present plausible allegations sufficient to support any required elements for municipal liability.

**A. No formal regulation or policy allowing officers to rely on hearsay in probable cause statements exists, only an improperly pled custom or practice.**

Here, Plaintiff alleges that Denver had a formal policy allowing officers to use hearsay in probable cause statements. But he does not point to one. A municipal policy or custom "may take the form of [1] a formal regulation or policy; [2] a widespread, permanent, and well-settled custom; [3] a decision by an employee with final policymaking authority; [4] a final policymaker's ratification of both an employee's unconstitutional actions and the basis for them; or [5] the deliberately indifferent failure to appropriately hire, train, supervise, or discipline employees." *Waller*, 932 F.3d at 1290 (citing *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)). The requirement that the Plaintiff demonstrate an official policy is "intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (emphasis in original) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986)).

Citing § 107.01(8)(e) of the Ops Manual, the Amended Complaint appears to allege that Denver maintained a formal regulation or policy allowing officers to rely on hearsay to support a warrant application. Specifically, Plaintiff asserts this provision authorizes reliance on hearsay to show probable cause in the issuance and execution of search and arrest warrants. [Doc. 16 at ¶¶ 48, 61, 73]. But nowhere in that section, or anywhere else in the Ops Manual, is there *any* formal policy that expressly authorizes the wholesale reliance on hearsay to show probable cause in the issuance and execution of search and arrest warrants. Nor is there an explicit reference to the term "hearsay." [*Id.*]; *See also Ops. Manual* § 107.00 (Rev. 07/16/2021). Instead, § 107.01(8)(e) states, "[t]he officer may rely upon information received through an *informant*, rather than upon direct observations, to show

probable cause" (*emphasis added*). *Ops. Manual* § 107.01(8)(e) (Rev. 07/16/2021). While that policy appears to relate to the *Jones* holdings, the language is inapplicable to the facts in this case. *Jones*, 362 U.S. at 268-270. Mr. Horan is not an informant as contemplated by this specific provision because an "informant" is a law enforcement term of art referring to an *unnamed* individual providing information aiding an officer's investigation. *Id.* at 268-270. In fact, the Ops Manual has an entire section devoted to DPD's use of informants in investigations, including informant supervision, compensation, classifications, and record keeping, which are conditions clearly not applicable to Mr. Horan as a random 911 caller. *Ops. Manual* § 302.14; *see also* fn. 1. Mr. Horan is simply a named complainant which is entirely different from a DPD informant, as contemplated by § 107.01(8)(e).

Thus, the Amended Complaint fails to point to a sufficient factual basis to support Plaintiff's claim that Denver had a *formal* policy allowing officers to rely on hearsay from known individuals (not informants) in making probable cause statements in warrant applications. *Waller*, 932 F.3d at 1290.

Without a formal policy, Plaintiff can only plausibly claim that an unofficial policy or custom allowing officers to rely on hearsay existed. [Doc. 16 at 62-66]. In order to establish an informal policy or custom, Plaintiff must allege sufficient facts demonstrating a widespread, permanent, and well-settled pattern or practice of relying on hearsay from non-informants in making probable cause statements. *Waller*, 932 F.3d at 1290.[3] To that end, Plaintiff alleges "pervasive" use of hearsay by named and unnamed "informants" in hundreds of recent search warrants issued by the "Denver District/County Court" within the last two years. [Doc. 16 at 62-66]. But it is unhelpful and conclusory for the Plaintiff to simply plead that he (or his counsel) conducted a review of "100s of search warrants" and concluded that in April of 2024, "at least 10 relied almost entirely upon hearsay to

[3] To plausibly plead such a longstanding practice or custom, Plaintiff must present "either a pattern of multiple similar instances of misconduct . . . or use other evidence"." *Sexton v. City of Colo. Springs*, 530 F. Supp. 3d 1044, 1070 (D. Colo. 2021) (quoting *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1213 (D.N.M. 2015)).

establish probable cause," without attaching the alleged offending affidavits or some facts contained within those probable cause statements to support his assertions. [*Id.* at 62]*; See also Iqbal*, 556 U.S. at 678. Critically, he doesn't even list the names. Denver and the Court, at this stage, do not have access to Plaintiff's alleged "100s of search warrants" to review, draw proper inferences, and determine if his self-serving conclusions are even accurate. [Doc. 16 at 62]. Without more, the Amended Complaint simply states "'naked assertion[s]' devoid of 'further factual enhancement" concerning an alleged offending Denver custom or practice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). This is insufficient to sustain either municipal liability claim; as such the claims should be dismissed.

**B. Plaintiff fails to plausibly allege that Denver acted with deliberate indifference.**

Even assuming *arguendo,* that the Amended Complaint properly pleads a Denver policy allowing hearsay in search warrant affidavits, Plaintiff's allegations also fall far short of plausibly asserting that Denver acted with deliberate indifference. "Deliberate indifference is an exacting standard of fault." *Irizarry v. City & Cnty. of Denver*, 661 F. Supp. 3d 1073, 1095 (D. Colo. 2023). "To demonstrate that a municipality acted with deliberate indifference, a plaintiff may show that the municipality had 'actual or constructive notice that its action or failure to act [was] substantially certain to result in a constitutional violation' and 'consciously or deliberately [chose] to disregard the risk of harm.'" *Finch*, 38 F.4th at 1244 (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Waller*, 932 F.3d at 1285 (citation omitted). To plausibly assert deliberate indifference by Denver, Plaintiff must present factual allegations supporting the existence of a pattern of constitutional violations. *Id.*

In this case, Plaintiff would need to allege sufficient facts to demonstrate that Denver knew or should have known that its "policy" of allowing DPD officers to include hearsay information in

their applications for search warrants was substantially certain to result in a constitutional violation and that Denver consciously or deliberately chose to disregard the risk of harm. *Finch*, 38 F.4th at 1244. However, the Amended Complaint contains no factual allegations from which this Court could infer that Denver was on notice, even constructively, that reliance on hearsay in a probable cause statement would result in a constitutional violation. Nor could it. Plaintiff's suggestion that Denver somehow should have known that *Jones* was not good law and that any warrant based in part on hearsay, even upon judicial approval, is invalid is implausible. *Jone*s has been well-settled precedent since 1960 and Plaintiff's argument that hearsay cannot be used to establish probable cause was expressly rejected by the Supreme Court. *Jones,* 362 U.S. at 269; *see also Brinegar,* 338 U.S. at 174, Fn. 13; *Draper*, 358 U.S. at 312, fn. 4. In short, Plaintiff provides no proof of knowledge on the part of Denver for such claims to be considered anything but sophistry for the purposes of meeting this element. Mere formulaic recitation of elements is insufficient. *Iqbal*, 556 U.S. at 678.

Even more, Denver cannot be deliberately indifferent for uncontested facially constitutional policies, especially when the asserted right is not clearly established. *See Szabla v. City of Brooklyn Park,* 486 F.3d 385, 392-394 (8th Cir. 2007) (en banc); *cited to in Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1279–80 (10th Cir. 2009) (discussing issues related to municipal liability for the discretionary exercise of constitutional policies allegedly applied in unconstitutional ways). Plaintiff fails to show how Denver could have known that an application of a constitutional policy was substantially certain to result in a constitutional violation and that Denver "'consciously or deliberately [chose] to disregard the risk of harm.'" *Finch*, 38 F.4th at 1244.

In sum, given that the law has permitted officers to rely on hearsay in probable cause statements in arrest warrant applications for over sixty years, deliberate indifference could never be proven, and this Court should dismiss Plaintiff's Amended Complaint. *See Jones*, 362 U.S. at 269-71.

**C. Plaintiff fails to plausibly allege causation.**

Where a plaintiff claims that the municipality has not "directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee. *Schneider*, 717 F.3d at 770 (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 405 (1997)). Thus, to establish causation, Plaintiff must show a "direct causal link between the municipal action and the deprivation of federal rights," *Brown*, 520 U.S. at 405, and that the municipality's conduct is "closely related to the ultimate injury," *Harris*, 489 U.S. at 391. "[W]here the policy relied upon is not itself unconstitutional, considerably more proof than a single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *Anglin v. City of Aspen*, 562 F. Supp. 2d 1304, 1323–24 (D. Colo. 2008); *quoting Okla. City v. Tuttle,* 471 U.S. 808, 824 (1985). Here, Plaintiff failed to establish a direct causal link between Denver's claimed policy of permitting hearsay in warrant applications to the execution of allegedly invalid search warrants.

Put plainly, neither the Detective nor any Denver policy are directly responsible for the approval process and issuance of search warrants, thereby negating a direct causal link to the alleged claims. By Plaintiff's own admission, the Detective searched the townhouse and seized the bat by relying on the judicially issued Search Warrant, based on the finding of probable cause by the Judge. [Doc. 16 at ¶ 79]. It is well-settled law, seemingly uncontested by Plaintiff, that a judge is the independent arbiter of probable cause, serving as a neutral and detached magistrate. *Jones*, 362 U.S. at 270; *See also Gates*, 462 U.S. 239-240; *Mathis*, 357 F.3d at 1205.

Moreover, the DA reviewed and approved the Affidavit before it was presentation to the Judge. [Doc.1 at ¶¶ 47, 78]. Denver is not responsible for the actions of the DA approving the

Affidavit because the DA works for the Second Judicial District[4] and is *not an employee of Denver*. The DA is not bound by any of Denver's alleged search warrant policies. Instead, a DA's review of a search warrant affidavit is authorized by state law. C.R.S. § 20-1-106.1(1)(a). This creates two full levels of attenuation and independent decision-making between any alleged unconstitutional misconduct by Denver or its employees and the DA's review, Judge's issuance, and Detective's Search Warrant execution. Accordingly, any alleged policy of Denver allowing officers to rely on hearsay in probable cause statements is too remote to the actual execution of an invalid search warrant to be considered the cause of Plaintiff's alleged constitutional harm. In addition to the multi-step search warrant approval process conducted by the independent parties, there are many layers of intervening U.S. and Colorado constitutional provisions, statutes, controlling case law, and policies that dictate the DA's and Judge's probable cause review, wholly independent of any alleged offending Denver policy. U.S. Const. amend. IV; *See also* CO Const. Art. II, § VII; C.R.S. §§ 16-3-301, 303; 20-1-106.1; Colo.R.Crim.P. 41.[5]

Here, Plaintiff is unable to prove that any alleged Denver policy directly resulted in the approval and issuance of the Search Warrant because of all the intervening people and policies actually responsible for the ultimate approval and issuance of the Search Warrant, irrespective of the use of hearsay in the Affidavit. Denver had no direct authority or influence on whether probable cause existed for the issuance of the Search Warrant by the Judge. Therefore, no direct causal link exists between the Detective's reliance on hearsay in the Affidavit and Plaintiff's harm and Plaintiff cannot establish this third element of municipal liability.

---

[4] A Colorado judicial district's district attorney's office is an elected position and a creature for state law and the Colorado constitution, representing the People of the State of Colorado, *not* Denver. *See* C.R.S. § 20-1-101, *et seq*.

[5] While police officers can be liable for knowing false statements or omissions in warrant applications, that is not alleged here.

Contrary to Plaintiff's assertions, the Detective complied with what the Fourth Amendment requires, *reasonableness*, in submitting the Affidavit and Search Warrant application for judicial determination of probable cause. Consistent with Constitutional requirements, that application was reviewed by the DA and approved by the Judge *before* the search and seizure occurred. *See* U.S. Const. amend. IV*; See also Jones*, 362 U.S. at 270-271. Moreover, *Jones* itself aptly explains the reason for its ruling, premised on a practical and historical understanding of the full text of Fourth Amendment, which respects precedent and the real-world consequences of the Court's constitutional jurisprudence:

> What we have ruled in the case of an officer who acts without a warrant governs our decision here. If an officer may act upon probable cause without a warrant when the only incriminating evidence in his possession is hearsay, it would be incongruous to hold that such evidence presented in an affidavit is insufficient basis for a warrant. If evidence of a more judicially competent or persuasive character than would have justified on officer in acting on his own without a warrant must be presented when a warrant is sought, warrants could seldom legitimatize police conduct, and resort to them would ultimately be discouraged. Due regard for the safeguards governing arrests and searches counsels the contrary. In a doubtful case, when the officer does not have clearly convincing evidence of the immediate need to search, it is most important that resort be had to a warrant, so that the evidence in the possession of the police may be weighed by an independent judicial officer, whose decision, not that of the police, may govern whether liberty or privacy is to be invaded.

*Id.* at 270-271.

## CONCLUSION

For the reasons set forth above, Denver respectfully requests that the Court dismiss Plaintiff's municipal claims against Denver.

Dated this 4th day of June, 2024.

Respectfully submitted by,

*s/Kevin Sobczyk*
Kevin Sobczyk
Honor K. Moore
Assistant City Attorney
Denver City Attorney's Office

Litigation Section
201 W. Colfax Avenue, Dept. 1108
Denver, Colorado 80202-5332
Telephone: 720-913-3100
Facsimile: 720-913-3155
E-mail: kevin.sobczyk@denvergov.org
E-mail: honor.moore@denvergov.org
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of June, 2024, the foregoing **DEFENDANT CITY AND COUNTY OF DENVER'S MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)** was filed with the Clerk of the Court via the CM/ECF system which will send a notification of such filing to the following:

Laurent A. Sacharoff
Laura Rovner
Nicholas A. Lutz
Miriam Kerler
Civil Rights Clinic
University of Denver Sturm College of Law
2255 East Evans Av. Ste. 335
Denver, CO 80208
Phone: (303) 871-6441
Phone: (303) 871-6361
lrovner@law.du.edu
lsacharoff@yahoo.com
Counsel for Plaintiff

*s/Kevin Sobczyk*
Denver City Attorney's Office