# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-00574-PAB-KAS

MICHAEL MENDENHALL,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER,

    Defendant.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Michael Mendenhall, through undersigned counsel, responds to Defendant's Motion to Dismiss, ECF No. 21.

This test case challenges the widespread use of hearsay to obtain warrants. It seeks ultimately to overturn *Jones v. United States*, 362 U.S. 257 (1960), which incorrectly held that the Fourth Amendment permits such hearsay. This case provides an appropriate vehicle to challenge *Jones*. Consistent with *Jones*, Denver police searched Plaintiff's townhouse, at night, pursuant to a warrant that relied entirely upon hearsay to support probable cause. ECF. No. 16 at ¶¶ 45-51.

The Defendant has moved to dismiss on two grounds. First, it argues that *Jones* should not be overruled. ECF No. 21 at 5-8. Second, it argues that Denver cannot be held liable under *Monell v. Department of Social Services,* 436 U.S. 658 (1978). ECF No. 21 at 8-15. Plaintiff acknowledges that this Court must follow *Jones* and grant the Defendant's Motion to Dismiss, but the Court

cannot dismiss based on Defendant's *Monell* argument because Plaintiff has amply demonstrated municipal liability based upon an official written policy.

## I. Background

Last March, Mr. Mendenhall, the owner of a successful catering business, was in the process of moving into his new business premises, a renovated townhouse in downtown Denver. ECF No. 16 at ¶¶ 13-14. He and a friend were relaxing in the townhouse kitchen around 10 pm when they heard a commotion outside the door. *Id.* at ¶¶ 17-19. Mr. Mendenhall grabbed a commemorative baseball bat while his friend opened the door. *Id.* at ¶ 20. Sitting on Mr. Mendenhall's stoop was a strange man, later identified as Sean Horan, with his two dogs and a group of women. *Id.* at ¶ 21. Mr. Mendenhall told him to leave, but Mr. Horan initially argued and refused. *Id.* at ¶ 22-24. Mr. Horan announced he would call the police, and Mr. Mendenhall closed the door. *Id.* at ¶¶ 24-25.

Mr. Horan called 911. *Id.* at ¶ 26. When police arrived, Mr. Horan claimed that Mr. Mendenhall had threatened him with a baseball bat. *Id.* at ¶ 36. Mr. Horan told them, unprompted, that he would like to press charges. *Id.* at ¶ 29. Based on Mr. Horan's account, police officers returned to Mr. Mendenhall's townhouse, arrested him, and took him across the street to a police car. *Id.* at ¶¶ 26-29, 36, 41.

The officers then decided to obtain a search warrant to search the townhouse for the baseball bat. *Id.* at ¶ 42. One officer called Detective Nicholas Rocco-McKeel and recounted Mr. Horan's story so that Detective Rocco-McKeel could obtain a warrant. *Id.* at ¶ 43. Detective Rocco-McKeel did not speak to Mr. Horan. *Id.* at ¶ 43. Detective Rocco-McKeel's warrant affidavit relied entirely upon Mr. Horan's double-hearsay claim. *Id.* at ¶ 45.

Detective Rocco-McKeel presented this affidavit to Judge Reneé A. Goble *Id.* at ¶ 49. Based on this affidavit, she issued a search warrant for the townhouse. *Id.* Shortly thereafter, Detective Rocco-McKeel executed the warrant, entered and searched the empty townhouse, and seized the bat. *Id.* at ¶ 49-50.

The warrant application, issuance of the warrant, and execution of the warrant were undertaken pursuant to official Denver policy. Specifically, Denver's police manual, issued by the Mayor and other executive Denver officials, authorizes the use of hearsay in obtaining a search warrant. *Id.* at ¶ 61. Section 107.01(8)(e) states that an officer need not rely on his own personal observations in an affidavit in support of a search warrant. *Id.* The manual states that the officer can rely instead upon the account of an informant instead—i.e., hearsay. *Id.*

## II.     Legal Standard

In resolving a Rule 12(b)(6) motion to dismiss, the court must "accept all well-pleaded factual allegations in the complaint as true" and view them in the "light most favorable to the nonmoving party." *Carroll v. Lawton Indep. Sch. Dist. No. 8*, 805 F.3d 1222, 1226 (10th Cir. 2015). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted). In litigation that seeks to overturn binding precedent, lower courts are bound to follow that precedent. *Agostini v. Felton*, 521 U.S.

203, 237 (1997); *see also, Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*, 851 F.3d 746, 749 (7th Cir. 2017), *rev'd*, 585 U.S. 878 (2018).

### III.     Argument

Though Plaintiff concedes that the Court must follow the precedent in *Jones* and dismiss his Amended Complaint on that ground, *Jones* should ultimately be overturned. Its rule allowing warrants relying on hearsay violates the Fourth Amendment. Additionally, Plaintiff has alleged *Monell* liability based both on an unconstitutional official policy and a custom and practice of authorizing warrants relying on hearsay.

####    A.     Plaintiff alleged a plausible Fourth Amendment violation against Denver.

The Fourth Amendment, as properly interpreted, requires firsthand witness testimony to obtain a warrant; it precludes reliance on hearsay to establish probable cause. The Supreme Court misinterpreted the Fourth Amendment warrant clause when it decided *Jones*. Under a correct interpretation, both Denver's official policy authorizing reliance on hearsay in warrant applications and its custom and practice relying on hearsay violate the Fourth Amendment.

#####       1.     The Warrant Clause Requires Firsthand Testimony

The Fourth Amendment oath requirement precludes hearsay to support probable cause. Laurent Sacharoff, *The Broken Fourth Amendment Oath*, 74 Stan. L. Rev. 603 (2022). First, the text supports this view. The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, *supported by Oath or affirmation*." U.S. Const. Amend. IV (emphasis added). "Oath" is shorthand for witness testimony. It is not enough that someone swear any oath, such as an oath of allegiance. It must be a testimonial oath to tell the truth and must be followed by actual testimony that supports probable cause. The doctrine of surplusage sheds additional light on

"oath." Without the oath requirement, the standard would simply be probable cause, which *could* appropriately be supported by hearsay. The oath requirement provides a *method* for establishing probable cause. If that method were to still allow hearsay, it would add very little to a bare probable cause provision.

The founding era rules of evidence support this contention. They banned hearsay not primarily because of the lack of cross examination but because of the testimonial oath. The person who observed the events was not under oath when she made the statement, and the person who was under oath did not observe the events. The "oath" was therefore shorthand for a ban on hearsay. Sacharoff, *supra*, at 642-44; 2 William Hawkins, *A Treatise of the Pleas of the Crown* 431 (London, E. & R. Nutt & R. Gosling 3d ed. 1739); Geoffrey Gilbert, *The Law of Evidence* 148-49 (London, Henry Lintot 1756).

Caselaw other than *Jones* also supports the argument, including founding era cases and counsel argument. *E.g., Ex parte Bollman*, 8 U.S. 75, 137 (1807). Indeed, from around 1850 to 1960, the vast majority of federal courts held that the Warrant Clause precludes hearsay and requires firsthand testimony. See Sacharoff, *supra,* at 667-670 (collecting cases); S. Berstein, Annotation, *Propriety of Considering Hearsay or Other Incompetent Evidence in Establishing Probable Cause for Issuance of Search Warrant,* 10 A.L.R. 3d 359, § 2[b] (1966) (before *Jones*, "it had been the rule in federal courts that hearsay could not be considered in establishing probable cause of issuance of a search warrant").

For example, in 1877, Supreme Court Justice Joseph Bradley, riding circuit, held that the Warrant Clause requires firsthand testimony of the "real accuser." *In re Rule of Ct.*, 20 F. Cas. at 1336-37 (C.C.N.D. Ga. 1877) (No. 12,126). "In other words, the magistrate ought to have before

5

him the oath of the real accuser…" *Id.* Several courts followed and even quoted Justice Bradley's language. *E.g., Miller v. United States*, 57 P. 836, 838 (Okla. 1899). This requirement continued into the twentieth century. *Giles v. United States,* 284 F. 208, 214 (1st Cir. 1922); *Veeder v. United States*, 252 F. 414, 418 (7th Cir. 1918) ("there must be consequences for the accuser to face."). State courts ruled to the same effect based upon their constitutional provisions equivalent to the Fourth Amendment. *State v. Gleason*, 4 P. 363, 363 (Kan. 1884).[1] Initially, the Supreme Court implicitly endorsed this view. *See Dumbra v. United States*, 268 U.S. 435, 440-41 (1925)*; Grau v. United States*, 287 U.S. 124, 127-28 (1932), *abrogated by Brinegar v. United States*, 338 U.S. 160 (1949).

##### 2. *Jones* Should Be Overruled

While this Court is bound to follow the Supreme Court's holding in *Jones, Jones* should nonetheless be revisited and ultimately overturned. In holding that a warrant may be based on hearsay, *Jones* ignored the relevant text of the Fourth Amendment and the oath requirement altogether. 362 U.S. at 269. The Court did not inquire whether the oath requirement mandated firsthand testimony, much less show why it did not. *Id.* Instead, *Jones* relied almost entirely on cases involving *warrantless* arrests, which of course do not require an oath at all. *Id.* at 269-270. It ignored early era case law, as well as the dense federal and state case law of the late 1800s and early 1900s banning hearsay. Instead, it relied entirely on the probable cause requirement rather

---

[1] Defendant argues that Plaintiff does not cite cases that stand for the proposition that the Fourth Amendment Warrant Clause bans hearsay. ECF No. 21 at 6. Defendant states, for example, that *State v. Gleason* involved preliminary hearings only, but *Gleason* squarely held that an arrest warrant cannot rest upon hearsay, relying on its state version of the Fourth Amendment. 4 P. 363, 363 (Kan. 1884).

than the oath requirement, and upon policy rather than the text and original meaning of the Clause. *Id.* at 271.

As for *stare decisis*, the Supreme Court has developed its approach in ways that support overruling *Jones*. The Court has not hesitated to overrule earlier cases that did not even attempt to assess the Constitution's text, original meaning, or founding-era practice, such as in *Crawford v. Washington*, 541 U.S. 36 (2004), *overruling Ohio v. Roberts*, 448 U.S. 56 (1980). And *stare decisis* appears to play a particularly limited role in the context of policing and the Fourth Amendment. The Court in *Arizona v. Gant* wrote: "We have never relied on *stare decisis* to justify the continuance of an unconstitutional police practice." *Gant*, 556 U.S. 332, 348 (2009).

Were the Supreme Court to overrule *Jones*, Mr. Mendenhall would prevail. The search warrant rested entirely on hearsay. Mr. Horan never testified in court; the judge did not observe his demeanor, ask him follow-up questions, or directly assess his credibility. When one eliminates the hearsay, Detective Rocco-McKeel's affidavit lacked probable cause for issuance of the warrant. Without the warrant, the search of Mr. Mendenhall's townhouse and the seizure of his bat were unreasonable.

Defendant argues that this case is not a proper vehicle to overturn *Jones* because *Jones* only addressed hearsay from an unnamed informant.[2] ECF. No. 21 at 5. First, the Court drew no such distinction. Second, the defendant in *Jones* argued generally against "hearsay" and the Court squarely held: "We conclude, therefore, that hearsay may be the basis for a warrant." *Id.* at 269, 271. More generally, the caselaw does not distinguish among types of informants, named or

---

[2] Defendant also argued that the affidavit in support of the search warrant in this case relied on more than just hearsay. These facts are not in the complaint. Moreover, Defendant does not dispute that without hearsay, the affidavit lacked probable cause.

unnamed, who supply the inculpatory information supporting a warrant application. *Illinois v. Gates*, 462 U.S. 213, 234 (1983). The Tenth Circuit, for example, treated a named informant just as it would an unnamed informant, permitted but subject to the reliability requirements governing any informant whose information appears as hearsay. *United States v. Pulliam*, 748 F.3d 967, 971 (10th Cir. 2014).

The same reasons that motivated the requirement of an oath, and its insistence upon firsthand testimony, remain compelling today, including accuracy, accountability, and the sanctity of the home against intrusion. Nor would such a requirement be impractical. Until 1960, both state and federal law enforcement obtained warrants based on firsthand testimony—because they had to. Sacharoff, *supra.*

### B. Plaintiff Sufficiently Pleaded Monell Liability Against Denver

The Plaintiff has alleged an official Denver policy that authorizes the use of hearsay in obtaining search warrants. He has alleged that Detective Rocco-McKeel followed that policy. This use of hearsay caused the alleged constitutional violations. That is all the Plaintiff need plead to state a claim for *Monell* liability. *Monell*, 436 U.S. at 702 ("[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983."); *see also Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) ("A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, [or] a well-settled custom. . . .").

### 1. Denver has a Written Policy Authorizing Reliance on Hearsay

The Complaint alleges that Denver has an official policy that authorizes reliance on hearsay in affidavits seeking warrants. Defendant agrees that the Denver Police Manual quoted in the Complaint constitutes the policy of Denver. ECF. No. 21 at 9-10 (quoting Manual of Operations for the Police Department of the City and County of Denver, (revised July 16, 2021) ("Denver Police Manual")). Defendant only disagrees in how to interpret that language. *Id.* But this argument is misguided; at this stage, Plaintiff need only plead "factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Here, Plaintiff quoted the Denver policy, which states that an "officer may rely upon information received through an informant, rather than upon direct observations, to show probable cause." *Id.* at ¶48. This policy permits warrant applications based on testimony that is not firsthand. Viewed in the light most favorable to the Plaintiff, Denver maintains an unconstitutional policy, which caused the deprivation of Plaintiff's Fourth Amendment rights.

Even if it were appropriate for the Court to consider the Defendant's arguments regarding the interpretation of the Denver Police Manual, the Defendant's logic fails. The Defendant argues that, because "informant" in the manual is a term of art that refers only to *unnamed* informants, the manual does not authorize reliance on hearsay and Detective Rocco-McKeel did not rely on the manual because he relied on a known person.[3] ECF No. 21 at 10. First, any informant—named

---

[3] "Informant" as used in the Amended Complaint, has no technical definition nor is it used as a term of art. Rather, the term refers to any person providing information to the authorities when that information is the basis of a probable cause finding supporting a warrant for search or arrest.

or unnamed—is a hearsay source; even under the Defendant's argument, the manual *does* authorize reliance on hearsay.

Second, it logically follows that if the policy authorizes the use of an unnamed informant, it must authorize the use of a named informant. A named informant provides *more* reliable hearsay than an unnamed informant. Surely Detective Rocco-McKeel's warrant application does not violate Denver's policy on seeking warrants because its hearsay allegations come from a named rather than an unnamed informant.

Moreover, leading cases use the term "informant" broadly to include anonymous informants, confidential informants, and named informants such as the "honest citizen who comes forward to report." *Gates*, 462 U.S. at 234. All these different types of informants' accounts are hearsay that must be assessed under a totality of the circumstances test. *Id.* Indeed, the Tenth Circuit has expressly referred to named informants simply as "informants" whose hearsay accounts must meet the *Gates* test. *Pulliam*, 748 F.3d at 971; *see also People v. Leftwich*, 869 P.2d 1260, 1268 (Colo. 1994) (referring to a named informant as an "informer").

To support its argument that the quoted policy refers to unnamed informants only, Defendant cites a separate section of the manual that discusses informants in an unrelated context, § 302.14, ECF No. 21 at 10, but that section is not referenced in the Complaint.[4] The Defendant cannot rely on facts outside of the Complaint. Nevertheless, Section 302.14, which governs paying and supervising certain types of informants, neither defines nor limits the term informant, especially not across the entire manual which is organized as standalone sections. It also does not mention "unnamed" informants.

---

[4] In any case, the manual nowhere defines the term "informant."

### 2. Denver has a Custom and Practice of Relying on Hearsay for Search Warrants

Alternatively, Plaintiff properly pleads that Denver has a custom of relying upon hearsay to obtain search warrants by alleging that the warrants in the Denver District/County Court are pervasive in their reliance on hearsay. ECF No. 16 at ¶¶62-66. Plaintiff alleges that detectives and other officers regularly recite the accounts of others in their affidavits, rather than their own observations, to establish probable cause of criminal activity. *Id.* Even during a one-month period, there were at least ten. *Id.* Drawing reasonable inferences in the Plaintiff's favor, that means over a two-year period, roughly 200 such applications relied upon hearsay. *Id.*

Defendant says these alleged facts are self-serving and that it does not have access to the underlying affidavits. ECF No. 21 at 11. But Defendant seeks to impose the standard for a summary judgment motion or even the standard at trial rather than the standard under Rule 12(b)(6). On a motion to dismiss, neither Defendant nor the court need review the affidavits and search warrants referenced. *Dubbs*, 336 F.3d at 1201 (the court's function on a motion to dismiss is not to weigh evidence but to assess whether the complaint alone is sufficient to state a claim for relief). The court must accept the facts stated as true, as long as they are plausible. *Carroll*, 805 F.3d at 1226; *Iqbal*, 556 U.S. at 678. It is plausible that the affidavits in the Denver court are pervaded with reliance on hearsay.

### 3. Plaintiff Need not Plead Deliberate Indifference, which is Adequately Alleged Nonetheless

Defendant asserts that the Plaintiff must allege that Denver was deliberately indifferent to the constitutional rights of Mr. Mendenhall. *See* ECF No. 21 at 11-12. But that misstates the law. Deliberate indifference generally only applies in the context of claims based upon municipal

inaction, such as those based upon failure to train or supervise theories. *See, e.g.*, *Schneider*, 717 F.3d at 773 (failure to train); *George, on behalf of Bradshaw v. Beaver Cnty., by & through Beaver Cnty. Bd. of Commissioners*, 32 F.4th 1246, 1253 (10th Cir. 2022) (same); *Connick v. Thompson*, 563 U.S. 51, 67 (2011) (same); *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1226 (D.N.M. 2015) (same); cf. *Monell*, 436 U.S. at 694-95 (not applying deliberate indifference where government's policy or custom represents official policy). It makes sense in these types of cases to require that the city have some awareness of the unlawful conduct of its employees before imposing liability. In fact, the Supreme Court in *City of Canton, Ohio v. Harris* expressly created the deliberate indifferent test for failure to train cases, as opposed to cases in which the policy itself violated the constitution. 489 U.S. 378, 383 (1989). Where an official policy or custom representing official policy is at issue, no such showing is necessary.

But where the *policy* itself is unconstitutional, as alleged here, the Plaintiff need not show deliberate indifference. As the Supreme Court has repeatedly stated:

> Where a plaintiff claims that a particular municipal action *itself* violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward. Section 1983 itself 'contains no state-of-mind requirement independent of that necessary to state a violation' of the underlying federal right.

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404–05 (quoting *Daniels v. Williams*, 474 U.S. 327, 330 (1986)). Put otherwise, deliberate indifference is necessarily met since the policy is undertaken with both the knowledge and purpose of the city.

Plaintiff alleges that the policy here, on its face, is unconstitutional. Denver's written policy permits reliance on hearsay, and the Complaint alleges that such reliance on hearsay violates the Constitution. Even were Plaintiff required to plead deliberate indifference, he has because Denver

12

intentionally promulgated, maintains, and enforces its policy. *See Schneider*, 717 F.3d at 771 ("The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm.").

The Defendant also argues that Denver could have no way of knowing the policy violated the constitution, in light of *Jones*, and was therefore not deliberately indifferent that it did. ECF No. 21 at 12. It relatedly argues that it was not clearly established that *Jones* was wrong. These arguments misstate the law in a few ways. First, Denver's argument is simply an argument for qualified immunity for a city, rejected by the Supreme Court in *Owen v. City of Indep, Mo.*, 445 U.S. 622, 623 (1980). *Owen* held that a city is liable even if it did not know the conduct was unconstitutional. *Id. Owen* and other cases make clear that there is no "additional mental state requirement" beyond knowledge of the policy. *Brown*, 520 U.S. 404–05. If that policy violates the Constitution, a city is liable.

Second, Denver's argument would preclude challenging existing case law. If Denver is an improper defendant, and an individual enjoys qualified immunity, those seeking to overturn incorrect precedent would have no one to sue, and case law could not develop. The Defendant also argues that the Complaint fails to allege causation. ECF No. 21 at 12. But as noted above, when the written policy itself violates the constitution, the Complaint need only allege that the employee followed that policy and thereby caused the constitutional violation. *Monell* at 694 (causation met "when execution of the policy or custom … inflicts the injury" and equating that to "moving force"); *see also Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010) ("the establishment or utilization of an unconstitutional policy or custom can serve as the supervisor's 'affirmative

link' to the constitutional violation"). Here, Detective Rocco-McKeel directly followed the policy by relying upon hearsay to obtain the search warrant.

Second, the Defendant points to the actions of the deputy district attorney and judge as somehow cutting off the causal chain. ECF No. 21 at 13-14. This assertion is also contrary to law. "A plaintiff [can] establish the 'requisite causal connection' by showing 'the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights.'" *Schneider*, 717 at 768. Indeed, the maintenance of an unconstitutional policy foreseeably results in the deprivation constitutional rights when that policy is enforced. *See, e.g., Dodds*, 614 F.3d at 1204 ("the policies' enforcement caused the constitutional violation before us. As a result, the facts show Defendant's maintaining these policies at the jail caused Plaintiff to be deprived of his due process rights."). That the deputy district attorney and judge signed off on the warrant does not negate that Denver's policy authorizing the use of hearsay to apply for the warrant was the driving force and but-for cause of the constitutional violation.

Defendant suggests that Denver policy is not the moving force because state and federal law permit reliance on hearsay. ECF. No 21 at 14. But state law only defeats city liability if it requires the action and the city is merely enforcing state law. *See, e.g., Cooper v. Dillon*, 403 F.3d 1208, 1222–23 (11th Cir. 2005). Here, neither state nor federal law *requires* the use of hearsay and, in fact, provide mechanisms to obtain firsthand testimony. Colo. R. Crim. P. 41(c)(2). Instead, Denver has decided, through its policy, to authorize its officers to rely upon hearsay—which they widely do. And it was Detective Rocco-McKeel who decided to rely on hearsay and no one else.

### IV. Conclusion

Even though the Defendant violated the Fourth Amendment, properly understood, Plaintiff concedes that the court must grant the Defendant's motion to dismiss under *Jones*, but the Court cannot dismiss Plaintiff's complaint on *Monell* grounds.

Respectfully submitted this 25th day of June 2024.

*s/ Laurent Sacharoff*
Laurent Sacharoff
(303) 871-6361
lsacharoff@yahoo.com

STUDENT LAW OFFICE

*s/ Nicholas A. Lutz*
Nicholas A. Lutz
Laura Rovner
Miriam Kerler
Civil Rights Clinic
University of Denver Sturm College of Law
2255 East Evans Av. Ste. 335
Denver, CO 80208
Phone: (303) 871-6441
Nicholas.Lutz@du.edu
Laura.Rovner@du.edu
Miriam.Kerler@du.edu