IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-00574-PAB-KAS

MICHAEL MENDENHALL,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER,

    Defendant.

---

**ORDER**

---

The matter before the Court is Defendant City and County of Denver's Motion to Dismiss Amended Complaint Under Rule 12(b)(6) [Docket No. 21]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiff Michael Mendenhall filed this matter as a test case to overturn *Jones v. United States*, 362 U.S. 257 (1960). Docket No. 16 at 1, ¶ 1

**I.   BACKGROUND[1]**

Mr. Mendenhall owns a staffing agency. *Id.* at 3, ¶ 13. Mr. Mendenhall moved his staffing agency into a converted townhouse at 1748 Blake Street in Denver, Colorado. *Id.* at 4, ¶ 14. Mr. Mendenhall's company leases the townhouse, and Mr. Mendenhall, therefore, has a property and possessory interest in the townhouse. *Id.*, ¶ 16.

---

[1] The facts below are taken from plaintiff's amended complaint, Docket No. 16, and are presumed to be true, unless otherwise noted, for purposes of ruling on the motions to dismiss.

On March 10, 2023, Mr. Mendenhall stayed after business hours to set up his office computers with the help of a friend. *Id.*, ¶ 17. At 10:00 p.m., Mr. Mendenhall heard women screaming and a man yelling outside the front door of the townhouse. *Id.*, ¶ 19. Mr. Mendenhall grabbed a wooden baseball bat while his friend opened the door. *Id.*, ¶ 20. On the stoop of the townhouse was a strange man, two dogs, and a group of women. *Id.*, ¶ 21. The man was later identified as Sean Horan. *Id.*, ¶ 22. Mr. Mendenhall told Mr. Horan to leave, but Mr. Horan refused to do so. *Id.* at 4–5, ¶¶ 22–23.

After further argument, Mr. Mendenhall closed the door, and Mr. Horan called the police. *Id.* at 5, ¶¶ 24–26. Shortly before 11:00 p.m., four police officers arrived near Mr. Mendenhall's townhouse. *Id.*, ¶ 27. The officers found Mr. Horan across the street from the townhouse. *Id.*, ¶ 28. Mr. Horan told the police that he had been walking and sat on the stoop of the townhouse when he encountered a group of women. *Id.*, ¶¶ 34–35. Mr. Horan told police that, soon thereafter, Mr. Mendenhall opened the door of the townhouse and demanded they leave. *Id.*, ¶ 35. Mr. Horan told police that Mr. Mendenhall had threatened him with a baseball bat. *Id.* at 6, ¶ 36.

Four police officers went to the townhouse and arrested Mr. Mendenhall when he opened the door. *Id.* at 6, ¶ 41. The officers then decided to obtain a search warrant to search the townhouse for the baseball bat. *Id.*, ¶ 42. One officer called Detective Nicholas Rocco-McKeel, who is a police officer employed by the City and County of Denver. *Id.*, ¶¶ 43–44. The officer recounted Mr. Horan's story to Detective Rocco-McKeel. *Id.*, ¶ 43. Detective Rocco-McKeel prepared a search warrant application and affidavit that relied entirely on Mr. Horan's story, as told to him by the other officer. *Id.*,

2

¶ 45.  Denver Police Manual Section 107.01(8)(e) authorizes the use of hearsay to support a search warrant application.  *Id.* at 7, ¶ 48.  In particular, it provides that the "officer may rely upon information received through an informant, rather than upon direct observations, to show probable cause."  *Id.*  In his affidavit, Detective Rocco-McKeel swore that Mr. Horan told another officer that Mr. Mendenhall had unlawfully threatened Mr. Horan with a bat, although Detective Rocco-McKeel neither observed any of the relevant facts nor spoke to Mr. Horan.  *Id.* at 8, ¶ 56.

Based on Detective Rocco-McKeel's affidavit, a search warrant was issued.  *Id.* at 7, ¶ 49.  Detective Rocco-McKeel then searched the townhouse and seized Mr. Mendenhall's bat.  *Id.*, ¶ 50.  Mr. Mendenhall was charged with felony menacing.  *Id.* at 9, ¶ 58.  All criminal charges against Mr. Mendenhall were eventually dropped.  *Id.*, ¶ 59.

Mr. Mendenhall brings two claims against defendant City and County of Denver ("Denver").  *Id.* at 10–14, ¶¶ 58–87.  First, Mr. Mendenhall brings a claim under 42 U.S.C. § 1983 based on Denver's allegedly unconstitutional policy of permitting police to use hearsay statements as a basis for establishing probable cause, which Mr. Mendenhall says resulted in an unconstitutional search of Mr. Mendenhall's townhouse.  *Id.* at 10–13, ¶¶ 67–84.  Second, Mr. Mendenhall brings a claim based on Denver's allegedly unconstitutional policy of permitting police to use hearsay statements as a basis for establishing probable cause, which resulted in an unconstitutional seizure of Mr. Mendenhall's baseball bat.  *Id.* at 13–14, ¶¶ 85–87.

On June 4, 2024, Denver moved to dismiss Mr. Mendenhall's claims, arguing that Mr. Mendenhall had failed to plausibly allege that Denver has violated his constitutional rights. Docket No. 21.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). A court, however, does not need to accept conclusory allegations. *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("[W]e are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so

4

general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

### III.   ANALYSIS

In his amended complaint, Mr. Mendenhall states that he is bringing "this test case to challenge an unreasonable search of his townhouse business and an unreasonable seizure of his property in violation of the Fourth Amendment." Docket No. 16 at 1, ¶ 1. In particular, Mr. Mendenall states that "[t]his case seeks to overturn *Jones*, and to restore the Warrant Clause requirement of firsthand testimony to support probable cause." *Id.* at 2, ¶ 6. Denver argues that Mr. Mendenhall's claims should be dismissed because he has failed to plausibly allege that Denver is liable for any violation of Mr. Mendenhall's constitutional rights. Docket No. 21 at 3.

Local governments may not be sued under 42 U.S.C. § 1983 on a theory of respondeat superior. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 692 (1978). Instead, local governing bodies can be sued directly only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

5

In order to state a claim for municipal liability under § 1983 for the actions of a municipal employee, a party must allege sufficient facts to demonstrate that it is plausible (1) that the municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004).

Denver makes five arguments that Mr. Mendenhall's claims should be dismissed. *See* Docket No. 21 at 5–15. First, Denver asserts that Mr. Mendenhall has failed to plausibly allege that a Denver employee violated Mr. Mendenhall's constitutional rights because the Supreme Court authorized the use of hearsay statements as a basis for establishing probable cause to search or seize a person's property in *Jones*, 362 U.S. at 269. Docket No. 21 at 5–9. While this issue is dispositive, Denver proceeds to make four other arguments. Next, Denver argues that Mr. Mendenhall has failed to identify a policy that authorized Denver police officers to rely on hearsay to obtain search warrants in a manner that violates the Constitution. *Id.* at 9–10. Third, Denver argues that Mr. Mendenhall's allegations regarding Denver police officers' use of hearsay statements in warrant applications are insufficient to demonstrate that Denver had a custom or practice of violating the Fourth Amendment. *Id.* at 10–11. Denver's fourth argument is that Mr. Mendenhall's complaint fails to plausibly allege that Denver was deliberately indifferent to any violation of Mr. Mendenhall's constitutional rights. *Id.* at 11–12. Finally, Denver argues that, even if Mr. Mendenhall were to establish that *Jones* was wrongly decided, that Denver could not have relied on *Jones* in establishing its practice of seeking warrants using hearsay, and that Detective Rocco-McKeel violated Mr. Mendenhall's Fourth Amendment rights, Mr. Mendenhall has failed to plausibly

6

allege that Denver caused Mr. Mendenhall's constitutional injuries because warrants are approved by judges who are not employees of the city.  *Id.* at 13–15.

The Court finds that Mr. Mendenhall has failed to establish the first element of his *Monell* claim against Denver regarding a violation of his constitutional rights by a Denver employee.  *See Jiron*, 392 F.3d at 419.  Mr. Mendenhall agrees that, considering the Supreme Court's ruling in *Jones*, his claims should be dismissed.  Docket No. 22 at 1 ("Plaintiff acknowledges that this Court must follow *Jones* and grant the Defendant's Motion to Dismiss").  It is therefore unnecessary to reach Denver's other arguments.

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.  "To authorize a valid search under the Fourth Amendment, '[a] search warrant must be supported by probable cause, requiring more than mere suspicion but less evidence than is necessary to convict.'"  *United States v. Chambers*, 882 F.3d 1305, 1310 (10th Cir. 2018) (quoting *United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000)).  Probable cause "requires a nexus between suspected criminal activity and the place to be searched."  *Danhauer*, 229 F.3d at 1006 (citing *United States v. Corral–Corral,* 899 F.2d 927, 937 (10th Cir. 1990)).  "An affidavit in support of a search warrant must contain facts sufficient to lead a prudent person to believe that a search would uncover contraband or evidence of criminal activity."  *Id.* (*United States v. Rowland*, 145 F.3d 1194, 1203 (10th Cir. 1998)).

In *Jones*, the Court stated that "[t]he question here is whether an affidavit which sets out personal observations relating to the existence of cause to search is to be

7

deemed insufficient by virtue of the fact that it sets out not the affiant's observations but those of another." 362 U.S. at 269. The Court determined that "[a]n affidavit is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented," and that "hearsay may be the basis for a warrant." *Id.* at 269, 271. Since *Jones*, the Tenth Circuit has repeatedly held that "hearsay evidence may form the basis for a probable cause determination." *United States v. Mathis*, 357 F.3d 1200, 1204 (10th Cir. 2004); *United States v. Snow*, 919 F.2d 1458, 1460 (10th Cir. 1990); *see also United States v. One Hundred Forty-Nine Thousand Four Hundred Forty-Two & 43/100 Dollars ($149,442.43) in U.S. Currency*, 965 F.2d 868, 874 n.3 (10th Cir. 1992). Moreover, the Tenth Circuit has "recognized that multiple layers of hearsay may support a finding of probable cause for a search warrant." *Mathis*, 357 F.3d at 1204 (citing *$149,442.43 in U.S. Currency*, 965 F.2d at 874 n.3).

Mr. Mendenhall alleges that "a detective with the Denver Police Department violated Mr. Mendenhall's Fourth Amendment rights when, pursuant to a search warrant issued solely on the basis of double hearsay, the detective searched Mr. Mendenhall's townhouse and seized a baseball bat that another man claimed Mr. Mendenhall had used to threaten him on Mr. Mendenhall's own doorstep." Docket No. 16 at 2–3, ¶ 8. The constitutional violations Mr. Mendenhall identifies in his complaint are that Detective Rocco-McKeel violated his rights by searching his house and by seizing the baseball bat pursuant to a warrant issued without probable cause because it was supported only by hearsay statements. *Id.* at 12–13, ¶¶ 77, 79, 83, 86. The Tenth Circuit has held that "multiple layers of hearsay may support a finding of probable cause for a search warrant," like the circumstances in this case. *Mathis*, 357 F.3d at 1204. Accordingly,

Mr. Mendenhall has failed to plausibly allege that Detective Rocco-McKeel violated his constitutional rights. Mr. Mendenhall's amended complaint does not adequately allege that a Denver employee committed a constitutional violation, and his complaint therefore does not plausibly state a claim for municipal liability. *Jiron*, 392 F.3d at 419. Accordingly, the Court will dismiss Mr. Mendenhall's claims.

## IV. CONCLUSION

Therefore, it is

**ORDERED** that Defendant City and County of Denver's Motion to Dismiss Amended Complaint Under Rule 12(b)(6) [Docket No. 21] is **GRANTED**. It is further

**ORDERED** that Michael Mendenhall's first and second claims for relief are **DISMISSED with prejudice**. It is further

**ORDERED** that Plaintiff's Unopposed Motion for Oral Argument on Defendant's Motion to Dismiss Amended Complaint [Docket No. 24] is **DENIED as moot**. It is further

**ORDERED** that this case is closed.

DATED February 4, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge